1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HECTOR DANIEL MENDOZA,

11             Petitioner,                    No. CIV S-09-1559-MCE-TJB

12        vs.

13   M. MCDONALD,

14             Respondent.         FINDINGS AND RECOMMENDATIONS

15   _____/

16                        I.  INTRODUCTION

17        Petitioner Hector Daniel Mendoza is a state prisoner proceeding pro se with a petition for

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the following reasons, it is

19   recommended that the habeas petition be denied.

20                        II.  PROCEDURAL HISTORY

21        On September 22, 2006, a Yuba County jury convicted Petitioner of "second degree

22   robbery (Pen. Code, § 211; count 1), attempted carjacking (Pen. Code, §§ 664/215, subd. (a);

23   count 2), unlawful taking or driving of a vehicle (Veh. Code, § 10851, subd. (a); count 3),

24   evading a police officer (Veh. Code, § 2800.2, subd. (a); count 4), possession of a firearm by a

25   felon (Pen. Code, § 12021, subd. (a); count 5), possession of a short-barreled shotgun (Pen.

26   Code, § 12020, subd. (a)(1); count 7), two counts of assault with a deadly weapon (Pen. Code, §

1

245, subd. (a)(2); counts 8 and 11), discharging a firearm in a grossly negligent manner (Pen. Code, § 246.3, subd. (a); count 9), grand theft (Pen. Code, § 487, subd. (c); count 10), drawing or exhibiting a firearm to a motor vehicle occupant (Pen. Code, § 417.3; count 12), possession of a loaded firearm on his person or in a vehicle by a felon (Pen. Code, § 12031, subd. (a)(2)(A); count 13), resisting arrest (Pen. Code, § 148, subd. (a)(1); count 14), and providing false identification to a police officer (Pen. Code, § 148.9, subd. (a); count 15), and found [Petitioner] personally used a firearm within the meaning of Penal Code section 12022.5, subdivision (a)(1) in counts 1, 2, 8, and 11, and within the meaning of section 12022.53, subdivision (c) in count 1 and section 12022.53, subdivision (b) in count 2."  Resp't's Answer Ex. A, at 2-3, ECF No. 12;[1] *see* Clerk's Tr. vol. 1, 115-33.

Also on September 22, 2006, the trial court struck the grand theft charge (count ten) "as surplusage," because it was the "lesser to that of the 211 charged in Count I."  Rep.'s Tr. vol. 2, 334, 358.

On November 17, 2006, the trial court sentenced Petitioner to a determinate aggregate term of thirty-one years and two months.  Clerk's Tr. vol. 1, 194; *see* Resp't's Answer Ex. A, at 3.  The trial court also struck the section 12022.5(a)(1) enhancements in counts one and two. Rep.'s Tr. vol. 2, 347-48; *see* Resp't's Answer Ex. A, at 3.

Petitioner directly appealed to the California Court of Appeal, Third Appellate District. *See* Lodged Doc. No. 1.  On March 21, 2008,  California Court of Appeal issued a reasoned decision (1) staying service of the sentence imposed on count thirteen so that Petitioner's total determinate prison term was thirty years and six months; and (2) amending the abstract to reflect

---

[1] The Case Management/Electronic Case Files (CM/ECF) docketing and file system is implemented, which allows the parties to electronically file pleadings and documents.  For pleadings or documents submitted in paper format, the filing is scanned and stored electronically into the CM/ECF system, except for lodged documents.  Each page of the electronic filing is numbered chronologically, whether or not the party numbered it.  If the filing is lengthy, the document is divided into parts.  Here, when a page number for a filed pleading or document is cited, the CM/ECF page number is used when available, which may not coincide with the page number that the parties used.

the proper California Penal Code sections in counts seven and fourteen.  *See* Resp't's Answer

Ex. A, at 14.  In all other respects, the California Court of Appeal affirmed the conviction and

sentence.  *Id.*

On April 25, 2008, Petitioner filed a petition for review in the California Supreme Court.

*See* Lodged Doc. No. 4.  On June 11, 2008, the California Supreme Court denied the petition

without comment or citation.  *See* Lodged Doc. No. 5.

One June 5, 2009, Petitioner filed a federal habeas petition.  *See* Pet'r's Pet., ECF No. 1.

On January 25, 2010, Respondent filed an answer, *see* Resp't's Answer, to which Petitioner filed

a traverse on April 9, 2010.  *See* Pet'r's Traverse, ECF No. 18.

## III.  FACTUAL BACKGROUND[2]

On the morning of January 19, 2006, Leslie Todd started her 2002 Honda Accord which was parked on the street.  Leaving the car running, she went inside her house to get a bottle of water.  When she returned a few minutes later, her car was gone.

Carol Trama, a neighbor of Todd's, was sitting at her kitchen table having coffee at around 7:30 a.m. that morning, when she saw a man walk by her house, go to Todd's house, get in a car, and drive up the street.  Trama identified [Petitioner] as the driver of the car at trial and at a show up.

Rafael Damian was digging fence holes that morning when [Petitioner] got out of a still running car and walked towards him while carrying a shotgun.  [Petitioner] said to Damian, "Give me your wallet if you don't want to die right now."  Damian tried to ignore [Petitioner] and looked away, so [Petitioner] shot into the ground about a foot-and-a-half from Damian's feet.  [Petitioner] then reloaded the shotgun, took Damian's wallet from his pocket, and walked back to the car.  Damian identified [Petitioner] as the perpetrator at the trial and in a show up.

At around 8:00 a.m. that morning, Diana Garcia was moving her son's car from the parking lot of her apartment complex to the

---

[2] These facts are from the California Court of Appeal's opinion issued on March 21, 2008.  *See* Resp't's Answer Ex. A, at 4-5.  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see Moses v. Payne,* 555 F.3d 742, 746 n.1 (9th Cir. 2009); *Davis v. Woodford,* 384 F.3d 628, 638 (9th Cir. 2004).

street.  While parking the car, she saw a gray Honda go in front of her and park.  The driver, whom she identified as [Petitioner] at trial and the show up, got out of his car and asked if the car belonged to somebody.  Garcia said it was her car, and [Petitioner] replied, "My bad" and walked to his car.  As Garcia continued parking, [Petitioner] came out of his car holding a gun, which he pointed at Garcia's head.  Garcia panicked, backed up, and drove off.

A dispatch regarding the theft of the Accord went out that morning and Yuba County sheriff's deputies spotted and pursued the car, Todd's Accord, which was driven by [Petitioner].  The Accord was pursued by two marked patrol cars, at least one of which had emergency lights and sirens activated.  The chase reached speeds of up to 80 miles per hour in a 35 mile-per-hour zone.  [Petitioner] once crossed into oncoming traffic to pass a gravel truck during the chase.

[Petitioner] stopped the Accord when the street became a dead-end at an apartment complex.  He then left the car and fled through the apartment complex with deputies in pursuit.  Ignoring a deputy's demand to stop, [Petitioner] kept running, eventually climbing a fence and running through a field, where he was stopped and arrested by a deputy and his K-9 police dog.  [Petitioner] told the deputies his name was Hector Servantes.

The Accord was searched, and a deputy found Damian's wallet along with a loaded shotgun and extra ammunition. Garcia identified the shotgun and the Accord as the ones used in the attempted carjacking.

## IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999).  Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

1   (1) resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established Federal law, as
2   determined by the Supreme Court of the United States; or

3   (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the
4   State court proceeding.

5   28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

6   *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

7   In applying AEDPA's standards, the federal court must "identify the state court decision

8   that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

9   "The relevant state court determination for purposes of AEDPA review is the last reasoned state

10  court decision." *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted).

11  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

12  orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v.*

13  *Nunnemaker*, 501 U.S. 797, 803 (1991). To the extent no such reasoned opinion exists, courts

14  must conduct an independent review of the record to determine whether the state court clearly

15  erred in its application of controlling federal law, and whether the state court's decision was

16  objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "The

17  question under AEDPA is not whether a federal court believes the state court's determination

18  was incorrect but whether that determination was unreasonable--a substantially higher

19  threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

20  "When it is clear, however, that the state court has not decided an issue, we review that question

21  *de novo*." *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*,

22  545 U.S. 374, 377 (2005)).

23                                    V. CLAIM FOR REVIEW

24  The petition for writ of habeas corpus sets forth one ground for relief. In ground one,

25  Petitioner contends the trial court violated his constitutional rights by imposing upper term and

26  consecutive sentences. Pet'r's Pet. 4. Specifically, Petitioner argues that the trial court imposed

                                              5

1    upper term and consecutive sentences based on facts not found by the jury beyond a reasonable

2    doubt.  While the trial court did commit error, Petitioner is not entitled to relief because the error

3    was harmless.

4            A.  Upper Term Sentences

5                1.  Background

6            The record shows that the trial court imposed upper term sentences on count one (second

7    degree robbery), count eight (assault with a deadly weapon and firearm enhancement), and the

8    firearm enhancement in count eleven (assault with a deadly weapon).  For count one, on the

9    underlying offense of second degree robbery, the trial court imposed the upper term of five years

10   because of Petitioner's "violent conduct" under Rule 4.421(b)(1) of the California Rules of

11   Court:

12                   [For c]ount I, violation of [s]ection 211, [the c]ourt finds there to
                     be no circumstances of mitigation and finds as an aggravating
13                   circumstance Rule [4.]421(b)(1), you've engaged in violent
                     conduct which indicates you are a serious danger to . . . society.
14                   Appropriate term is the upper term . . . of five years.

15                   The jury having found to be true the enhancement pursuant to
                     Penal Code 12022.53(c), you are sentenced to serve 20 years.  That
16                   is to be served consecutively to the five years just imposed. . . .

17   Rep.'s Tr. vol. 2, 358-59.

18           For count eight, the trial court selected:  (1) the upper term for assault with a deadly

19   weapon because of Petitioner's unsatisfactory probation performance under Rule 4.421(b)(5);

20   and (2) the upper term for the firearm enhancement because Petitioner was on probation when

21   the offense was committed under Rule 4.421(b)(4):

22                   Turning to [c]ount VIII, the [c]ourt will select the upper term as the
                     appropriate term.  Finding in aggravation Rule [4.]421(b)(5) to be
23                   true.  It is the judgment and sentence of the [c]ourt you be
                     sentenced to state prison as to that count for four years.  That is
24                   stayed pursuant to Penal Code Section 654.  The enhancement the
                     jury found to be true under 12022.5(a)(1), [the c]ourt will select the
25                   upper term of 10 years as the appropriate term.  Circumstan[c]es in
                     aggravation, Rule [4.]421(b)(4), you were on probation when the
26                   offense was committed.  That is stayed pursuant to 654.

6

1   Rep.'s Tr. vol. 2, 360.

2          For count eleven, the trial court selected the upper term for the firearm enhancement

3   because the crime "involved a threat of great bodily harm" under rule 4.421(a)(1):

4                  Count XI, violation of Penal Code 245(a)(2) as to a separate
               victim, under Rule 425, consecutive term is appropriate, serve one
5              year to be served consecutively.  That is stayed pursuant to 654.
               12022.5(a)(1) enhancement jury found to be true[.]  Court finds in
6              aggravation, Rule [4.]421(a)(1), it involved a threat of great bodily
               harm, upper term is the appropriate term, serve 10 years
7              consecutively.  That is stayed pursuant to 654.

8   Rep.'s Tr. vol. 2, 361.

9                  2.  State Court Decisions

10         On direct appeal, Petitioner raised generally that "the trial court's imposition of an upper-

11  term and consecutive sentences violated [Petitioner's] Sixth and Fourteenth Amendment rights to

12  a jury trial and due process[,] and fundamental fairness and double jeopardy principles mandate

13  reduction of the sentence to a single term."  Lodged Doc. No. 1, at 12.  Specifically, Petitioner

14  mentioned how the trial court improperly imposed the upper term on count one, under Rule

15  4.421(b)(1).  Lodged Doc. No. 1, at 12.  Petitioner then asserted that the trial court improperly

16  imposed the upper term "as to some of the [other] counts," under "[R]ule 4.421(a)(1) (the crime

17  involved great violence, great bodily harm, or threat of great bodily harm); [R]ule 4.421(b)(2)

18  ([Petitioner's] prior convictions as an adult are numerous or of increasing seriousness); [R]ule

19  4.421(b)(4) ([Petitioner] was on probation or parole when the crime was committed)[;] and

20  [R]ule 4.421(b)(5) ([Petitioner's] prior performance on probation or parole was unsatisfactory)."

21  Lodged Doc. No. 1, at 12-13.

22         In its decision, the California Court of Appeal only addressed the upper term sentences on

23  counts one and eight:

24                  [Petitioner] claims his upper term and consecutive sentences are
               invalid under *Blakely* [*v. Washington*], . . . [(2004)] 542 U.S. 296
25             [159 L. Ed. 2d 403] and *Cunningham* [*v. California*], . . . [(2007)]
               549 U.S. [270] [166 L. Ed. 2d 856].  We disagree, finding only the
26             *Blakely* error to be harmless.

7

The United States Supreme Court held in *Cunningham, supra,* 549 U.S. at page ___ [166 L. Ed. 2d at p. 873] that under California's determinate sentencing law, the middle term is the statutory maximum which a judge may impose based solely on the facts reflected in the jury verdict or admitted by the defendant.  Thus, except for a prior conviction, any fact that increases the penalty for a crime beyond the middle term must be tried to the jury and proved beyond a reasonable doubt.  (*Id.* at p. ___ [166 L. Ed. 2d at pp. 873-874].)

The court imposed an upper term sentence for robbery on count 1, the principal term, and stayed upper terms pursuant to Penal Code section 654 in count 8 for assault with a deadly weapon and the firearm enhancement.  In imposing the upper term on count 1, the court found as an aggravating factor that [Petitioner] had engaged in violent conduct that indicates a serious danger to society.  (Cal. Rules of Court, rule 4.421(b)(1).)  In count 8, the court sentenced [Petitioner] to an upper term for assault with a deadly weapon based on [Petitioner's] unsatisfactory performance on probation or parole and an upper term on the firearm enhancement based on [Petitioner] being on probation at the time of the offense.  (Rule 4.421(b)(4), (5).)  The court also found no mitigating factors regarding any of the sentences.

. . . .

Applying *Cunningham* in *People v. Black* (2007) 41 Cal.4th 799, 816 (*Black II*), our Supreme Court held that "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions."  *Black II* also held that the imposition of consecutive sentences does not violate *Blakely*.  (*Id.* at p. 823.)

It follows that the exception regarding a prior conviction applies not only to the fact of a prior conviction, but also to "an issue of recidivism which enhances a sentence and is unrelated to an element of a crime."  (*People v*[.] *Thomas* (2001) 91 Cal.App.4th 212, 223.)  Therefore, "'the fact of a prior conviction, and related facts . . . may be judicially found at sentencing."  (*United States v. Cordero* (5th Cir. 2006) 465 F.3d 626, 632-633, fns. omitted.)  For instance, the trial court may determine and rely on the defendant's probation or parole status to impose the upper term.  (*Cf. United States v. Fagans* (2[]d Cir. 2005) 406 F.3d 138, 141-142; *United States v. Corchado* (10th Cir. 2005) 427 F.3d 815, 820 ["the 'prior conviction' exception extends to 'subsidiary findings' such as whether a defendant was under court supervision when he or she committed a subsequent crime"].)  Therefore, the upper term sentence on the count 8 enhancement does not violate *Blakely*.

[Petitioner's] poor performance on probation or parole arose from the prior convictions that led to his being placed on probation, is not related to his current offense, and was established by reference to existing court records.  There is no question his performance on probation has been poor; he was on probation at the time of the offenses and had previously been found to have violated probation.

In *Black*, the Supreme Court took a broad view of the scope of the prior conviction exception.  (*Black II*, *supra*, 41 Cal.4th at pp. 819-820.)  Mindful of the California Supreme Court's directive not to read the recidivism exception to *Blakely* "too narrowly" (*id.* at p. 819), we conclude [Petitioner's] poor performance on parole and probation, as documented in the probation report, is a factor which is not subject to the rule of *Blakely*.  [Petitioner] therefore was not entitled to a jury trial on his upper term sentence for assault with a deadly weapon in count 8.

. . . .

The upper term sentence in count 1 is another matter.  The aggravating factor upon which the court relied to impose the upper term, [Petitioner's] violent conduct showing a danger to society (Cal. Rules of Court, rule 4.421(b)(1)), is not sufficiently related to recidivism to be excepted from *Blakely*.  Although prior convictions can provide the necessary proof of prior violent conduct (*People v. Williams* (1980) 103 Cal.App.3d 507, 510-511), this aggravating factor also encompasses conduct not related to a defendant's prior convictions, and therefore does not come within the recidivism exception.  (*People v. Velasquez* (2007) 152 Cal.App.4th 1503, 1515.)

Nor is the sentence in count 1 exempted from *Blakely* on the basis of the trial court's general statement that [Petitioner's] prior convictions, probation status and poor performance on probation applied to some of the counts.  The language of *Black II* strongly suggests the trial court must have relied on [Petitioner's] prior criminal record as one of its reasons for imposing the upper term and thus "authorizing" the upper term and permitting the trial court to use otherwise constitutionally impermissible factors in reaching its decision.  (*Black II*, *supra*, 41 Cal.4th at p. 818; *People v. Cardenas* (2007) 155 Cal.App.4th 1468, 1481-1482 (*Cardenas*).)

As the Black II court emphasized, "[o]n appellate review, [it is the] trial court's reasons for its sentencing choice" which are examined. (41 Cal.4th at p. 818, fn. 7; *Cardenas*, *supra*, 155 Cal.App.4th at p. 1482.)  Indeed, Penal Code section 1170, subdivision (b) and rules 4.406(a) and 4.406(b) of the California Rules of Court require the trial court to state on the record its reasons for imposing the upper term.  (*Cardenas*, *supra*, at p. 1482.)  If the trial court were to rely on [the] defendant's prior convictions or some other recidivist

factor, it should first state its reliance on that factor when pronouncing sentence for that crime.  (*Ibid.*)

Although the trial court and the probation report identified aggravating factors related to [Petitioner's] recidivism, the trial court did not apply those factors to the upper term sentence in count 1.  Since this sentence was based on a single factor which is subject to *Blakely*, the upper term sentence in count 1 violated the Sixth and Fourteenth [A]mendments.  We must therefore determine whether the error is harmless.

In *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*), a companion case to *Black II*, the California Supreme Court stated the test for harmless error (*Washington v. Recuenco* (2006) 548 U.S. 212 [165 L. Ed. 2d 466]) was whether the reviewing court could conclude, "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury[.]"  (*Sandoval*, *supra*, at p. 839.)

The People contend the error was harmless because a jury would have found beyond a reasonable doubt the violent conduct and prior conviction aggravating factors.  We agree the error was harmless, but for a different reason.

Although the trial court relied on a constitutionally invalid factor to impose an upper term in count 1, the court did rely on two different valid aggravating factors in imposing the upper terms for assault with a deadly weapon and the firearm enhancement in count 8.  The court's identification of valid qualifying aggravating factors in count 8 renders the *Blakely* error in count 1 harmless.

In *People v. Osband* (1996) 13 Cal.4th 622 (*Osband*), the trial court imposed a full consecutive sentence for the defendant's rape conviction.  (*Id.* at p. 728.)  The one factor used to impose the consecutive term, was also one of the three factors used to justify imposition of the upper term for the same offense, and thus constituting an improper dual use of a sentencing factor.  (*Ibid.*)

The California Supreme Court concluded the error was harmless.  "In this case, the court could have selected disparate facts from among those it recited to justify the imposition of both a consecutive sentence and the upper term, and on this record we discern no reasonable probability that it would not have done so.  Resentencing is not required."  (*Osband*, *supra*, 13 Cal.4th at p. 729.)

Although *Osband* applied a lower standard of harmless error than the harmless beyond a reasonable doubt standard which applies to *Blakely* error, we see no reason to reach a different result.  The trial court had already used facts which were valid under *Blakely* to find

> [Petitioner] eligible for two separate upper term sentences in count 8.  It also found no mitigating factors applied to the upper term sentences in both counts 1 and 8.  We are convinced beyond a reasonable doubt that if trial court knew that *Blakely* prohibited the use of the violent conduct aggravating factor it would have chosen one of the valid factors it relied on in count 8 and imposed the upper term.  Accordingly, we conclude the *Blakely* error in [Petitioner's] upper term sentence in count 1 was harmless beyond a reasonable doubt.

Resp't's Answer Ex. A, at 4-11.  The California Court of Appeal failed to address the upper term sentence on the firearm enhancement in count eleven.

In Petitioner's petition for review, Petitioner raised the same claim, stating generally, that "an upper term and a consecutive term violate the rules established in *Cunningham* and negate *Black I*, *Black II*, and *Sandoval* where the trial court employs factors neither envisioned by, nor subsumed within, the verdict." Lodged Doc. No. 4, at 5.  The California Supreme Court denied the petition without comment or citation.  *See* Lodged Doc. No. 5.

Here, the state court decision appropriate for review depends on what count is addressed.  The California Court of Appeal's decision is the "last reasoned state court decision" to address the upper term sentences on counts one and eight.  *Delgadillo*, 527 F.3d at 925 (citations omitted); *see* Resp't's Answer Ex. A, at 4-11.  The California Court of Appeal, however, did not issue a reasoned decision explaining why Petitioner's direct appeal was denied on his upper term sentence on the firearm enhancement in count eleven.

Petitioner also raised the upper term sentence on the firearm enhancement in count eleven in general terms in his petition for review, *see* Lodged Doc. No. 4, at 5, which the California Supreme Court denied without comment or citation.  *See* Lodged Doc. No. 5.  Where no reasoned opinion exists, an independent review of the record is conducted to determine whether the state court clearly erred in its application of controlling federal law, and whether the state court's decision was objectively unreasonable.  *Delgado*, 223 F.3d at 981-82.  The California Court of Appeal's decision will be reviewed when addressing the upper term sentences on counts one and eight, *see Delgadillo*, 527 F.3d at 925, and an independent review of the record will be

conducted when addressing the firearm enhancement in count eleven. *Delgado*, 223 F.3d at 981-82.

### 3. Legal Standard for Imposition of Upper Term Sentences

The United States Supreme Court clearly stated that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely v. Washington*, 542 U.S. 296, 301 (2004) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)); *accord Cunningham*, 549 U.S. at 274-75. "[S]tatutory maximum" means "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303.

Under California's determinate sentencing law ("DSL"), "[t]he statute defining the offense prescribes three precise terms of imprisonment--a lower, middle, and upper term sentence." *Cunningham*, 549 U.S. at 277. Because "an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance[,]" *id.* at 288, the DSL's middle term is "the relevant statutory maximum." *Id.* In *Cunningham*, the Supreme Court held that California's DSL violates a defendant's right to a jury trial to the extent it permits a trial court to impose an upper term based on facts found by the court rather than by a jury. *Id.* at 293.

Even if a trial court violates a petitioner's Sixth Amendment rights, the violation is subject to the harmless error test under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See Butler v. Curry*, 528 F.3d 624, 648-49 (9th Cir. 2008) (conducting harmless error review of *Apprendi* violation). Applying *Brecht*, a habeas court must determine whether "the error had a substantial and injurious effect on [Petitioner's] sentence." *Id.* at 648 (quoting *Hoffman v. Arave*, 236 F.3d 523, 540 (9th Cir. 2001)) (internal quotation marks omitted). "Under that standard, we must grant relief if we are in 'grave doubt' as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt." *Id.* (citing *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

1     4.  Analysis

2          a.  Count Eight:  Assault With A Deadly Weapon and Firearm

3          Enhancement

4          First, the California Court of Appeal reasonably held that "the upper term sentence on the

5    count 8 enhancement does not violate *Blakely*."  Resp't's Answer Ex. A, at 7.  As stated earlier,

6    the trial court imposed the upper term sentence on the firearm enhancement in count eight under

7    Rule 4.421(b)(4).  The aggravating factor in Rule 4.421(b)(4) applies where "[t]he defendant was

8    on probation or parole when the crime was committed."  Petitioner's challenge to the imposition

9    of the upper term sentence is foreclosed by *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79

10   (9th Cir. 2009).

11         In *Kessee*, the Ninth Circuit held that, "although a defendant's probationary status does

12   not fall within [*Apprendi*'s] 'prior conviction' exception, a state court's interpretation to the

13   contrary does not contravene AEDPA standards."  *Id.*; *cf. Butler*, 528 F.3d at 647 (finding on *de*

14   *novo* review that probationary status does not fall within *Apprendi*'s "prior conviction"

15   exception).[3]  In imposing the upper term to Petitioner's sentence, the trial court cited the fact that

16   Petitioner was on probation when he committed the crime.  The state court's conclusion that the

17   trial court properly relied on Petitioner's probationary status as a factor warranting the upper term

18   sentence cannot serve as a basis for federal habeas relief.

19         Regardless, even if the trial court committed constitutional error in not submitting the

20   question of Petitioner's probationary status to a jury, any error was harmless.  *Butler*, 528 F.3d at

21   648-49 (applying harmless error analysis to sentencing errors).  The record clearly shows that

22   Petitioner "pled to one felony count of [assault with a deadly weapon under Section] 245(a)(1)

23

24          [3] *Kessee* substantially circumscribed *Butler*'s holding.  In *Kessee*, the Ninth Circuit
     explained that *Butler*'s holding applies only when federal courts apply *de novo* review.  *Kessee*,
25   574 F.3d at 678-79.  And while acknowledging that *Butler* was not decided incorrectly, the Ninth
     Circuit unequivocally stated that "*Butler* does not represent clearly established federal law 'as
26   determined by the Supreme Court of the United States.'"  *Id.* at 679 (quoting 28 U.S.C. §
     2254(d)(1)).

1  [of the California Penal Code] . . . on 4/17/01[.]" Clerk's Tr. vol. 1, 173.  Petitioner was

2  sentenced to "5 years formal probation, 365 days county jail."  *Id.*  Petitioner committed the

3  current offenses on January 19, 2006.  Resp't's Answer Ex. A, at 3.  Had the jury been asked to

4  determine this question, it would have found that Petitioner was on probation when he committed

5  the crime.

6          Second, Petitioner is not entitled to habeas relief on the upper sentence term for assault

7  with a deadly weapon in count eight.  As stated earlier, the trial court imposed the upper term

8  sentence for assault with a deadly weapon in count eight under Rule 4.421(b)(5).  The

9  aggravating factor in Rule 4.421(b)(5) applies where "[t]he defendant's prior performance on

10 probation or parole was unsatisfactory."  The record reveals that while Petitioner was on

11 probation, Petitioner (1) "fail[ed] to report to [his] probation officer after being deported and

12 returning to the United States" on June 14, 2005; and (2) failed to appear for arraignment on

13 October 4, 2004, since he was arrested on September 24, 2004, for "allegedly operating a motor

14 vehicle without a valid driver's license, and with a blood alcohol concentrat[ion (BAC)] of .08%

15 or more."  Clerk's Tr. vol. 1, 174.

16         In *People v. Towne*, 44 Cal. 4th 63, 82; 78 Cal. Rptr. 3d 530; 186 P.3d 10 (2008), the

17 California Supreme Court held that "[w]hen a defendant's prior unsatisfactory performance on

18 probation or parole is established by his or her record of prior convictions, it seems beyond

19 debate that . . . the right to a jury trial does not apply."  However, the California Supreme Court

20 found that "[i]n circumstances in which a finding of poor performance on probation or parole can

21 be established only by facts other than the defendant's prior convictions, we conclude that the

22 right to a jury trial applies to such factual determinations."  *Id.*  The California Supreme Court

23 listed, "[f]or example, a presentence report might allege that the defendant did not appear for

24 appointments, failed a drug test, or stopped attending counseling sessions as directed."  *Id.*

25         We need not resolve whether a jury would find, beyond a reasonable doubt, that

26 Petitioner's failure to report to his probation officer, arrest for driving without a valid driver's

1   license and with a BAC of .08 or more, and arrest for the current offenses, constituted

2   unsatisfactory performance on probation.  Under California law, only one aggravating factor is

3   necessary to authorize an upper term sentence.  *Butler*, 528 F.3d at 641.  Here, as explained

4   earlier, a jury had ample evidence to render a verdict beyond a reasonable doubt that Petitioner

5   was on probation when he committed the current offenses under Rule 4.421(b)(4).  *See Apprendi*,

6   530 U.S. at 490.

7          Further, Rule 4.421(b)(2) also justifies imposing an upper term sentence, where a

8   defendant's "prior convictions as an adult or sustained petitions in juvenile delinquency

9   proceedings are numerous or of increasing seriousness."  Petitioner had prior convictions for:  (1)

10  curfew violation and minor in possession of alcohol; (2) unlawful sexual intercourse with a

11  minor for which Petitioner was adjudged a Ward of the Court; and (3) assault with a deadly

12  weapon.[4]  Clerk's Tr. vol. 1, 172-73.  Petitioner's prior convictions are "numerous" within the

13  meaning of Rule 4.421.  *See People v. Searle*, 213 Cal. App. 3d 1091, 1098, 261 Cal. Rptr. 898

14  (1989) (finding three prior convictions for driving while intoxicated were "numerous" in context

15  of predecessor to Rule 4.421).  Although prior convictions are excepted from the jury submission

16  requirement, a jury would have found beyond a reasonable doubt that Petitioner had prior

17  convictions and sustained juvenile petitions that were numerous or of increasing seriousness, or

18  that Petitioner was on probation when he committed the current offenses.  *See Apprendi*, 530

19  U.S. at 490; *United States v. Zepeda-Martinez*, 470 F.3d 909, 913 (9th Cir. 2006) (holding trial

20  court's imposition of enhanced term harmless because trial court relied on a fact supported by

21  "overwhelming and uncontroverted evidence"); *see also United States v. Salazar-Lopez*, 506

22  F.3d 748, 755 (9th Cir. 2007) (same).  Habeas relief is unwarranted for upper term sentences on

23  count eight.

24  _____

25         [4] The record also shows that Petitioner, as a minor, was arrested for petty theft under
    Section 488 of the California Penal Code, but was "counseled and released by [the] probation
26  officer."  Clerk's Tr. vol. 1, 172.

1          b.  Count One:  Second Degree Robbery

2          The California Court of Appeal reasonably held that "the upper term sentence in count 1

3  violated the Sixth and Fourteenth Amendments," but "the error was harmless."  Resp't's Answer

4  Ex. A, at 9.  As stated earlier, the trial court imposed the upper term sentence on count one under

5  Rule 4.421(b)(1).  The aggravating factor in Rule 4.421(b)(1) applies where "[t]he defendant has

6  engaged in violent conduct that indicates a serious danger to society."  The California Court of

7  Appeal noted that the upper term sentence in count one "was based on a single factor which is

8  subject to *Blakely*."  Resp't's Answer Ex. A, at 9.  The Court of Appeal then found that "if the

9  trial court knew that *Blakely* prohibited the use of the violent conduct aggravating factor[,] it

10  would have chosen one of the valid factors it relied on in count 8 and imposed the upper term."

11  *Id.* at 11.

12          As discussed above, the trial court found that Petitioner was on probation when he

13  committed the crimes.  *See supra* V.A.4.a.  Probationary status is a legitimate factor justifying

14  the imposition of an upper term sentence.  Cal. Rules of Court, Rule 4.421(b).  A jury would

15  have found beyond a reasonable doubt that Petitioner was on probation when he committed the

16  crimes.  *See supra* V.A.4.a.  Any error on the trial court's behalf was harmless, and habeas relief

17  is not warranted for the upper term sentence on count one.

18          c.  Firearm Enhancement in Count Eleven:  Assault With a Deadly

19              Weapon

20          An independent review of the record shows that habeas relief is also not warranted for the

21  upper term sentence on the firearm enhancement in count eleven.  As stated earlier, the trial court

22  imposed the upper term on the firearm enhancement in count eleven under Rule 4.421(a)(1).  The

23  aggravating factor in Rule 4.421(a)(1) applies where "[t]he crime involved great violence, great

24  bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty,

25  viciousness, or callousness."

26          Even if the trial court committed constitutional error in not submitting the question of

16

1   Petitioner's violent conduct to a jury, any error was harmless. *Butler*, 528 F.3d at 648-49. Under

2   California law, only one aggravating factor is needed to authorize an upper term sentence. *Id.* at

3   641. As stated earlier, a jury would find beyond a reasonable doubt that Petitioner had prior

4   convictions or sustained juvenile petitions that were numerous or of increasing seriousness, an

5   aggravating factor under Rule 4.421(b)(2), or that Petitioner was on parole when he committed

6   the current offenses, which was another aggravating factor under Rule 4.421(b)(4). *See supra*

7   V.A.4.a. Habeas relief is not warranted on the upper term sentence for the firearm enhancement

8   in count eleven.

9       B. Consecutive Sentences

10          1. Background

11      The trial court also imposed consecutive sentences on counts one (second degree

12   robbery), two (attempted carjacking), three (unlawful taking or driving of a vehicle), five

13   (possession of a firearm by a felon), and thirteen (possession of a loaded firearm on his person or

14   in a vehicle by a felon). Rep.'s Tr. vol. 2, 359-61. The trial court reasoned:

15          As to the decision [the c]ourt has to make in regards to
            consecutive/concurrent sentences, . . . Counts I, VIII, IX and X all
16          relate to the same basic conduct. Counts II, XI, XII, relate to the
            same basic conduct. Those two sets of conduct, robbery of Mr.
17          Damien, attempted carjacking as to D.G[.] -- I don't recall her last
            name -- the crimes, their objectives, were predominantly
18          independent of one another. They involve separate acts of violence
            or threats of violence. I will adopt what [the prosecutor] stated a
19          while ago in regards to the passage of time, even though it is a
            fairly short time frame, somewhere between 45 and 75 minutes
20          total. The offenses were committed at different times, they were in
            separate places, and in this [c]ourt's mind, not so closely in time to
21          indicate a single period of aberrant behavior. So under every leg of
            425(a), consecutive sentences are appropriate.
22
            Count III, that crime and objective is certainly predominantly
23          independent of and the objective is different from both Counts I
            and II.
24
            Count IV, likewise true for the same reasons.
25
            Counts V, VII, and XIII, likewise true for the same reasons. V, VII
26          and XIII have all some cross-over between themselves.

17

1    And [c]ounts XIV and XV were both misdemeanors.  I indicated I
     would serve those concurrently regardless, even though I believe
2    under the facts sentencing the sentence consecutively could be
     justified.  So those are the reasons for the consecutive terms.
3

4   *Id.* at 355-56.

5              2.  State Court Decision

6        Here, the state court decision appropriate for review is the California Court of Appeal's

7   decision because it is the "last reasoned state court decision" to address this issue.  *Delgadillo*,

8   527 F.3d at 925 (citations omitted); *see* Resp't's Answer Ex. A, at 4-11.  The California Court of

9   Appeal rejected this claim as follows:  "Following the mandate of *Black II*, we also hold

10  [Petitioner's] consecutive sentences do not violate the Sixth or Fourteenth Amendments."

11  Resp't's Answer Ex. A, at 8 (footnote omitted).

12             3.  Analysis

13       The California Court of Appeal's decision is not contrary to, or an unreasonable

14  application of, clearly established federal law.  The Supreme Court recently held that, when a

15  defendant has been convicted of multiple offenses, that defendant is not entitled to a jury

16  determination of any facts necessary to the imposition of consecutive sentences.  *Oregon v. Ice*,

17  555 U.S. 160, ___ - ___, 129 S. Ct. 711, 714-15 (2009).  The decision to impose consecutive

18  sentences was not historically a jury function.  *Id.* at 717.  The Supreme Court rejected the

19  argument that the constitutional jury right is applicable because a state law may require predicate

20  reasons before consecutive sentences may be imposed.  *Id.* at 718.  The trial court's imposition of

21  consecutive sentences did not violate Petitioner's constitutional rights, and Petitioner's claim

22  fails.

23                      VI.  CONCLUSION

24       For the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's

25  application for writ of habeas corpus be DENIED.

26       These findings and recommendations are submitted to the United States District Judge

                                 18

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one

days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

shall be served and filed within seven days after service of the objections.  Failure to file

objections within the specified time may waive the right to appeal the District Court's order.

*Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57

(9th Cir. 1991).  In any objections he elects to file, Petitioner may address whether a certificate of

appealability should be issued in the event he elects to file an appeal from the judgment in this

case.  *See* Rule 11(a), Federal Rules Governing Section 2254 Cases (district court must issue or

deny certificate of appealability when it enters final order adverse to applicant).

DATED:       February 2, 2011.

_____

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE